UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANGRADE, INC.,<br><br>             Plaintiff,<br><br>        v.<br><br>SYNOPSYS, INC.,<br><br>             Defendant. | Case No. 25-cv-01381-NW<br><br>**ORDER GRANTING SYNOPSYS'<br>MOTION FOR DECLARANT M.G. TO<br>PROCEED UNDER PSEUDONYM**<br><br>Re: ECF No. 117<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART SYNOPSYS'<br>MOTION FOR SANCTIONS**<br><br>Re: ECF No. 118<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART MOTIONS TO<br>FILE UNDER SEAL**<br><br>Re: ECF Nos. 116, 122, 126 |

Defendant Synopsys, Inc. seeks sanctions against Plaintiff Cangrade, Inc. for conduct that occurred during Synopsys' expert's review of Cangrade's platform. ECF No. 118.[1] Synopsys also moves to allow its expert to proceed under a pseudonym (ECF No. 117), and both parties have filed motions to file material under seal (ECF Nos. 116, 122, 126).

The Court held a hearing on June 10, 2026. ECF No. 136. Having considered the parties' arguments and the relevant legal authority, the Court GRANTS IN PART AND DENIES IN PART Synopsys' motion for sanctions, GRANTS Synopsys' motion to proceed under pseudonym,

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court<br>Northern District of California

and GRANTS IN PART AND DENIES IN PART the sealing motions as set forth below.

## I.    BACKGROUND[2]

This dispute arises out of Synopsys' alleged improper disclosure of Cangrade's proprietary source code software.  Synopsys engaged M.G.[3] to serve as an expert to review Cangrade's recruiting software system.

On April 3, 2026, M.G. logged onto Cangrade's recruiting software system and immediately saw a fictitious job posting for a "Cybersecurity Expert / Expert Witness."  ECF No. 116-4 at 2.  The post was created on April 2, 2026, and identified the "recruiter" as Gershon Goren, Cangrade's CEO, and the hiring company as "Evilkie Farr & Gallagher," a pejorative play on words of Synopsys' law firm of record, Willkie Farr & Gallagher.  "Evilkie" purportedly sought "an expert witness to testify in defense of the indefensible."  *Id.*  The post described "the ideal candidate" as a person who "ha[d] no moral or ethical norms."  ECF No. 116-4.  The "About the Company" section described the firm as "Helping the worst people and corporations since 1888 to destroy the World.  Proud supporter of the president DJT, who is just about to nuke us all, which will count as our ultimate success."  *Id.*  Given the content of the post, and because it purportedly sought the same type of expert as M.G., M.G. interpreted Cangrade's fictitious post as "targeted directly" at him.  ECF. No. 117.

M.G. "was shaken and disturbed by the listing" and believes that "the post was intended to intimidate [M.G.] and dissuade [M.G.] from (a) serving as an expert in this case, and (b) working with Willkie Farr & Gallagher."  ECF No. 118-1 (M.G. Decl.) ¶¶ 11–12.  M.G. is concerned that Cangrade may harass him, "smear [M.G.'s] reputation if [M.G.] continue[s] [his] work on this case," and "will attempt to monitor and track [M.G.'s] interactions with its system, thereby interfering with [M.G.'s] evaluation of Cangrade's software."  *Id.* ¶¶ 12–13.  M.G. did not know if the fake post was publicly available but believes that, if it is or was, "it would not be difficult for

---

[2] The background facts are drawn from the parties' briefs and declarations.

[3] As discussed in Section III of this Order, Synopsys seeks, and this Court grants an Order allowing its expert to proceed under his initials.

United States District Court<br>Northern District of California

[the public] to connect the post to [M.G.] and [M.G.'s] role in this litigation." *Id.* ¶ 14. M.G. further believes that "further dissemination of the post could harm [M.G.'s] reputation." *Id.*

## II.    MOTION FOR SANCTIONS

### A.    Legal Standard[4]

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). But the Supreme Court has cautioned that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44.

Thus, "[t]o protect against abuse and to ensure parties receive due process, individuals subject to sanction are afforded procedural protections, the nature of which varies depending upon the violation, and the type and magnitude of the sanction." *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088–89 (9th Cir. 2021) (*quoting F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001)). Where a party seeks "strictly compensatory or remedial sanctions . . . , civil procedures, rather than criminal-type procedures, may be applied." *Id.* at 1089. In that case, "the sanction may go no further than to redress the wronged party 'for losses sustained' and may not impose any additional consequence as punishment for the sanctioned party's misbehavior." *Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–30 (1994)). But "when a sanction is imposed under a court's inherent authority as a penalty or to punish someone, a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Id.*; *see Goodyear Tire & Rubber Co.*, 581 U.S. at 108 ("To level [a punitive] penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof.") (citation omitted).

---

[4] Synopsys seeks sanctions solely pursuant to the Court's inherent authority and not under Federal Rule of Civil Procedure 37 or 28 U.S.C. § 1927.

"When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *America Unites for Kids*, 985 F.3d at 1090; *see id.* ("[A] sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (citation omitted).  "[B]ecause a district court's inherent powers are so potent, [the Ninth Circuit] require[s] that when a court imposes sanctions based on bad faith, the court must make an explicit finding that the sanctioned party's conduct 'constituted or was tantamount to bad faith.'"  *Id.* at 1090 (citing *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–50 (9th Cir. 1997)).

### B.    Discussion

Synopsys argues that "[t]he only reasonable conclusion that can be drawn from [Cangrade's] actions is that Cangrade flagrantly abused the discovery process in an attempt to disrupt Synopsys' relationship with its expert and to dissuade him from testifying in this litigation."  ECF No. 118 at 3.  Synopsys contends that such conduct amounts to bad faith and warrants an order

> (1) barring Cangrade, its employees, its counsel, or anyone acting in concert with or at its direction, from directly or indirectly contacting, approaching, or attempting to harass current or former Synopsys personnel, its experts and its attorneys of record; (2) precluding Cangrade from introducing evidence concerning the operation of its software at trial—namely, the recruiting platform that contains the fabricated job posting; and (3) awarding Synopsys its attorneys' fees and costs associated with the present motion, as well as any further relief the Court deems appropriate.

*Id.* at 4 (footnote omitted).  In a footnote, Synopsys also states that, "[g]iven the venom directed at Willkie, Farr & Gallagher by Mr. Goren in the job post, there are concerns about the safety of Willkie's lawyers and its in-house client representative during the anticipated deposition of Mr. Goren" and thus "requests that the Court order Cangrade to pay for security to be present at [Goren's] deposition, as well as for any other deposition Mr. Goren elects to attend."  *Id.* at 4 n.2.

Cangrade does not oppose a protective order but argues that Synopsys' other request relief should be denied.  Cangrade does not dispute that Goren created the post.  Indeed, Goren took responsibility and apologized for doing so.  ECF No. 123-1 (Goren Decl.) ¶ 3 ("I wrote the

United States District Court
Northern District of California

4

Posting shortly after learning that Synopsys had requested login credentials to Cangrade's platform to enable its expert witness to access and examine the system."); *id.* ¶ 4 ("I regret having created the Posting, and I apologize for it.  The Posting was inappropriate, unprofessional, and inconsistent with the standards I hold myself to as the CEO of Cangrade and as a professional."). Goren explained that "[i]t is standard practice to utilize a fictional posting for demo accounts" like the one created for M.G.  *Id.* ¶ 3.  He "did not intend to harass, intimidate, threaten, or influence [M.G.], or anyone else"; rather, he created the post during "a lapse in judgment driven by the frustration [he had] been experiencing over the course of this litigation."  *Id.* ¶ 3.  Goren further represented, in his declaration and at the hearing, that the post has been removed and was not publicly available or disseminated.  *Id.* ¶¶ 3–4.  Goren promises that he "ha[s] no intention of creating any similar postings related to the parties, witnesses, experts or other individuals involved with this litigation in the future."  *Id.* ¶ 4.

The Court has carefully reviewed the fictitious post, as well as the M.G. and Goren Declarations.  The Court notes that there is nothing in the record that suggests Cangrade's counsel participated, encouraged, or otherwise knew about Goren's fictitious post.  While the post was inappropriate and reflects poorly on Cangrade and its CEO, the Court cannot find that it amounts to "witness tampering," as argued by Synopsys, or the level of bad faith that warrants the full suite of sanctions sought by Synopsys.  *America Unites for Kids*, 985 F.3d at 1090 ("[B]ad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose.").  The term "bad faith" is frequently used to describe a wide range of improper conduct.  *See, e.g.*, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."); *In re Roundup Prods. Liab. Litig.*, No. 16-MD-02741-VC, 2022 WL 17839995, at *3 (N.D. Cal. Aug. 30, 2022) ("In determining whether a plaintiff has acted in bad faith, district courts have generally focused on whether the plaintiff engaged 'in strategic gamesmanship by keeping a removal-spoiling party in the case past the one-year mark in order to prevent a defendant's removal from state court.'") (citation omitted); *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 396 (N.D. Cal.

5

2012) (counsel acted in bad faith by failing to produce witness for deposition).

But not all "bad faith" conduct warrants the full-force of the Court's inherent sanctioning power. "[T]he bad faith requirement sets a high threshold[.]" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). "Mere recklessness, without more, does not justify sanctions under a court's inherent power." *Moonbug Ent. Ltd. v. Babybus (Fujian) Network Tech. Co., Ltd*, No. 21-CV-06536-EMC, 2023 WL 11922843, at *5 (N.D. Cal. Oct. 31, 2023) (citing *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001)); *see Kelley v. Fundomate, Inc.*, No. 22-CV-05814-FLA (ASX), 2024 WL 5265410, at *2 (C.D. Cal. Nov. 4, 2024) ("[B]ehavior that is unreasonable, reckless, or negligent is insufficient to support sanctions under the court's inherent powers) (citing *America Unites for Kids*, 985 F.3d at 1090). The Court should therefore limit its inherent sanctioning authority to those instances where the accused's conduct necessitates the Court's intervention to ensure fundamental procedural and substantive fairness in the litigation. *See Moonbug Ent. Ltd.*, 2023 WL 11922843, at *4 ("Sanctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'") (quoting *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)).

While a limited protective order is appropriate, Synopsys' request for an order precluding Cangrade from introducing evidence of the operation of its software goes too far.[5] Similarly, nothing in the record supports the need for Synopsys and its counsel to have security at Goren's deposition. Goren's fictitious post did not contain any direct or indirect threats of violence or harm towards M.G., or Synopsys' officers, employees, or representatives, that suggests that anyone's personal safety was or is at risk.

Accordingly, Synopsys' motion for sanction is GRANTED IN PART as follows: Goren, in his capacity as Cangrade's representative, may attend depositions, hearings, mediation sessions, trial, and other events that require Cangrade's presence. Cangrade and its employees, officers,

---

[5] After Synopsys filed its motion for sanctions, the parties stipulated to dismiss the trade secret claims. ECF No. 133. At the hearing, counsel for Synopsys asserted that, as there is only a breach of contract claim remaining, evidence regarding the functionality of Cangrade's software is no longer relevant. Synopsys nevertheless did not withdraw its request for evidentiary sanctions.

agents, and representatives, including Goren, shall not otherwise directly or indirectly contact any experts that Synopsys has retained for this matter.

Synopsys' motion for sanctions is DENIED WITHOUT PREJUDICE in all other respects. Nothing herein precludes Synopsys from seeking attorney's fees for bringing this motion, or seeking further relief if Cangrade violates this Order or engages in similar conduct in the future.

## III.    MOTION TO PROCEED UNDER PSEUDONYM

In support of its motion for sanctions, Synopsys submits a declaration from "M.G.," "a non-party expert witness retained by Synopsys[.]" ECF No. 117 at 2.  Synopsys seeks an order allowing M.G. to proceed under his initials only on grounds that "M.G. has been the target of a deliberate campaign of harassment and intimidation by Cangrade . . . and its CEO in connection with this litigation" such that "[p]ublic disclosure of M.G.'s identity would compound that harm by linking M.G.'s name to defamatory content on the court's public docket." ECF No. 117 at 2; *see* M.G. Decl. ¶¶ 6–12.  Cangrade did not file an opposition.

The public retains a common law right to access judicial proceedings. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978).  Nonetheless, it is in the Court's discretion to allow pseudonyms. *See id.* ("[T]he decision as to access is one best left to the sound discretion of the trial court."); *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 993 (N.D. Cal. 2015).  In the Ninth Circuit, a party may proceed anonymously "in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).  The use of a pseudonym is therefore reserved for the "unusual case" where anonymity is "necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980).

Cangrade is aware of M.G.'s identity and has been served with the unredacted version of the M.G. Declaration. M.G. Decl. ¶ 3; ECF No. 119 (proof of service).  Cangrade therefore will not be prejudiced if M.G. proceeds under a pseudonym in publicly filed documents, nor has Cangrade opposed this motion.  In addition, M.G.'s identity is currently not central to Cangrade's claims or Synopsys' defenses, such that the public does not have a significant interest in knowing

7

M.G.'s name.  Under these circumstances, the Court GRANTS the motion to proceed under a pseudonym only to the extent it relates to documents filed in connection with Synopsys' motion for sanctions.  If M.G. submits another declaration or is otherwise referenced in future filings, Synopsys must seek leave to have M.G. proceed anonymously.

## IV.    MOTIONS TO FILE UNDER SEAL

Both parties filed motions to file under seal in connection with the briefing on Synopsys' motion for sanctions.  ECF Nos. 116, 122, 126.

### A.    Legal Standard

Two standards govern motions to seal portions of court documents: a "compelling reasons" standard, which applies to dispositive pleadings, and a "good cause" standard, which applies to non-dispositive pleadings.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Court documents that are technically non-dispositive may still require the party to meet the "compelling reasons" standard when they are more than tangentially related to the merits of the case.  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

### B.    Discussion

As Synopsys' motion for sanctions has no bearing on the merits of the case, the Court applies the good cause standard.  *See Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2016 WL 10770864, at *1 (N.D. Cal. May 3, 2016) (applying good cause standard to motion to seal documents filed in connection with motion for discovery sanctions).

#### 1.    Synopsys' Motions to File Under Seal (ECF No. 116).

Synopsys moves to file under seal portions of the M.G. Declaration (ECF No. 116-3); the entirety of Exhibit A thereto, the screenshot of the fictitious job post at issue (ECF No. 116-4); and portions of its motion for sanctions that quote the post.  ECF No. 116.  Synopsys' motion is GRANTED IN PART AND DENIED IN PART.

The motion is denied as to Exhibit A and the portions of the motion for sanctions that quote or discuss the Exhibit.  Exhibit A is a screenshot of the fictitious posting.  Synopsys contends that if these documents were made public, "it would further disseminate defamatory and harassing content directed at both Synopsys' retained expert, Dr. M.G., and Synopsys' counsel . . .

United States District Court
Northern District of California

and would publicize details of Cangrade's proprietary software platform that are the subject of trade secret claims in this action."[6]  ECF No. 116 at 2.

The Court disagrees.  The job posting does not name M.G.  In addition, neither Synopsys nor Cangrade explain how the screenshot of the post—which does not contain any source code—discloses Cangrade's now-withdrawn alleged trade secrets.  *See* ECF No. 63 (Second Am. Compl.) ¶ 114 ("Cangrade's proprietary software source code contains and constitutes trade secrets subject to protection under the Defend Trade Secrets Act ('DTSA'), 18 U.S.C. § 1831 *et seq.*, U.S.C. § 1839(3)[.]").  Synopsys' assertion that Exhibit A "would further disseminate defamatory and harassing content" toward M.G. and counsel is also unpersuasive.  *See Synology Inc. v. Via Licensing Corp.*, No. 22-CV-01405-TLT, 2023 WL 5276030, at *3 (N.D. Cal. Aug. 9, 2023) (denying motion to seal portions of exhibit that plaintiff contended "'contain various instances of information calculated to embarrass and harass [plaintiff]'" on grounds that "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning]' are insufficient.") (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); brackets in the original).

In addition, Synopsys moves to file under seal the portions of the M.G. Declaration that reveal M.G.'s first and last names, as well as his place of business.  As the Court grants the motion to allow M.G. to proceed under a pseudonym, the Court GRANTS the motion to seal his name and his place of business as it appears in the M.G. Declaration.

### 2. Cangrade's Motion to Consider Whether Another Party's Material Should be Sealed (ECF No. 122)

Pursuant to Civil Local Rule 79-5(f), Cangrade filed a motion to consider whether the portions of Cangrade's opposition to the motion for sanctions and Goren Declaration that discuss or quote the fictitious job post and identify M.G.'s name should be sealed.  ECF No. 122.  Synopsys submitted a declaration in support of Cangrade's motion, as required by Civil Local Rule 79-5(f)(3).  ECF No. 125.

---

[6] As noted above, only the breach of contract claim remains.

9

For the reasons stated above, the Court GRANTS Cangrade's motion with respect to the portions of the opposition and Goren Declaration that identify M.G. by name and DENIES the motion insofar as it concerns the fictitious job post.

### 3. Synopsys' Motion to File Under Seal (ECF No. 126)

Synopsys moves to file under seal portions of its reply that quote the job post. ECF No. 126. The Court DENIES this motion for the reasons stated above.

## V. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Synopsys' motion for sanctions (ECF No. 118) is GRANTED IN PART AND DENIED IN PART as set forth above.

2. Synopsys' motion for M.G. to proceed under pseudonym (ECF No. 117) is GRANTED.

3. Synopsys' motion to file under seal portions of its motion for sanctions and the attached M.G. Declaration and Exhibit A (ECF No. 116) is GRANTED IN PART AND DENIED IN PART. The portions of M.G. Declaration that disclose M.G.'s first and last names and his place of business may remain under seal; the motion is DENIED in all other respects.

4. Cangrade's motion to consider whether another party's material should be sealed (ECF No. 122) is GRANTED IN PART AND DENIED IN PART. The portions of Cangrade's opposition to the motion for sanctions and Goren Declaration that disclose M.G.'s first and last names shall remain under seal; the motion is DENIED in all other respects.

5. Synopsys' motion to file under seal portions of its reply (ECF No. 126) is DENIED.

6. No later than June 17, 2026, the parties shall re-file the M.G. and Goren Declarations with redactions consistent with this Order. Synopsys' motion for sanctions (ECF No. 116-2), Exhibit A to the M.G. Declaration (ECF No. 116-4), Cangrade's opposition (ECF No. 122-1), and Synopsys' reply (ECF No. 126-1) shall be unsealed.

///

///

**IT IS SO ORDERED.**

Dated: June 10, 2026

_____

Noël Wise
United States District Judge